BLUE RAPIDS MILLING & ELEVATOR CO. *v.* PORT HURON
TERMINAL CO.

Warehousemen—Liability of Corporation for Acts of Officer.
Where officers of warehouse corporation, after allegedly ceasing active operations, permitted its vice-president and former manager to continue business in its warehouse, and he used company's stationery and warehouse receipts, company's course of conduct was such that it is chargeable with responsibility for loss sustained on products stored in said warehouse for which company's receipts were issued.

Appeal from St. Clair; George (Fred W.), J. Submitted June 15, 1932. (Docket No. 160, Calendar No. 36,606.) Decided October 5, 1932. Rehearing denied December 6, 1932.

Case by Blue Rapids Milling & Elevator Company, a foreign corporation, against Port Huron Terminal Company, a Michigan corporation, for failure to return a quantity of stored grain products. Judgment for plaintiff. Defendant appeals. Affirmed.

*Stewart & Black,* for plaintiff.

*William O. Covington,* for defendant.

North, J. The defendant in this case was incorporated in 1924 for the purpose of operating a cold storage and warehousing business incident to which it issued negotiable certificates to persons warehousing their goods at its place of business in Port Huron. In 1930 the corporate officers were: President, W. L. Jenks; secretary-treasurer, Alex

Moore; and vice-president, William Sanborn Jenks, hereinafter called W. S. Jenks. In 1929 W. S. Jenks, a nephew of W. L. Jenks, was also general manager of the company. While his title as manager seems not to have been continued during the year 1930, during that year he was a director and vice-president. Defendant claims that prior to 1930 it ceased active operations; but W. S. Jenks was permitted to carry on business in the defendant's warehouse in 1930 and 1931, and with the knowledge of the company he was there conducting the business under the name of "The Terminal Supply Company" and also the "Terminal Brokerage Company." While so doing business W. S. Jenks opened negotiations with the plaintiff which resulted in plaintiff in September and November, 1930, warehousing in defendant's plant a substantial amount of grain products. Plaintiff was a foreign corporation doing business at Blue Rapids, Kansas. The correspondence with plaintiff was carried on by W. S. Jenks on the stationery of the defendant company and signed "Port Huron Terminal Company, by W. S. Jenks, vice-president." Plaintiff's demand for an accounting of the proceeds of its products stored or a return thereof was not satisfied, and this suit was brought to recover therefor from defendant. Plaintiff had judgment, and defendant appealed.

The sole defense urged is that W. S. Jenks had no authority to represent or bind the defendant company in this transaction. After taking testimony in open court, the trial judge, who heard the case without a jury, reached the conclusion that there was "evidence in the case sufficient to form an issue of fact on the question of his (W. S. Jenks') authority to execute" the two storage receipts issued to plaintiff. Notwithstanding this, the trial judge

further stated that he based his decision upon both ratification and estoppel.

It conclusively appears from this record the president of defendant company knew that W. S. Jenks was doing business under the name of the "Terminal Supply Company" and the "Terminal Brokerage Company." It is a fair inference that the secretary-treasurer must also have been aware of this circumstance. Both of these officers of the defendant company knew that this business was being carried on in the defendant's storage building; and with or without their knowledge W. S. Jenks was continuing the use of the stationery and storage receipts of the defendant company and continuing to sign the same either as manager or vice-president of the defendant company. It is a fair inference from the record that W. S. Jenks continued to receive mail addressed to the Port Huron Terminal Company. As late as 1931 the local city directory listed William S. Jenks as vice-president and manager of the Port Huron Terminal Company. While there is no evidence that this circumstance came to the knowledge of plaintiff, it is indicative of the lack of care on the part of the other officers of the defendant company in ascertaining whether W. S. Jenks was continuing to operate in defendant's name.

As a matter of estoppel, the trial judge relied particularly on defendant's original answer, wherein it is admitted that "the plaintiff delivered a quantity of grain products *to defendant,* which issued its warehouse receipt therefor." The defense alleged was that defendant had returned "all the remaining goods" to plaintiff, and that defendant did not have in its possession any property belonging to plaintiff for which it had not already accounted. This answer was filed August 4, 1931, and an

amended answer, which does not contain the above quoted admission but relies solely upon lack of authority of W. S. Jenks to bind the company, was filed October 31, 1931. For some time prior to the trial the whereabouts of W. S. Jenks was unknown, and in consequence neither party produced him as a witness. The defense relies principally upon the recital in its corporate records made at the time W. S. Jenks was elected vice-president for 1930, which recital provides: "He (W. S. Jenks) to take no action binding the company without the written consent of the president." Both the president and the secretary-treasurer, constituting two of the three directors, testified that they had no knowledge of the transactions which are the subject-matter of this suit, and that they neither authorized nor consented thereto. Defendant's by-laws provided that the president "shall have general supervision over the affairs of the corporation and over the other officers." Notwithstanding the above-quoted restriction of power of the vice-president to bind the company and also the provision in the by-laws, we think the record contains testimony abundantly justifying the conclusion that the defendant company's course of conduct was such as charged it with responsibility. Careful consideration of this record leaves us with a decidedly unfavorable impression of defendant's disavowal of the admission in its first answer that it was a party to this transaction. In testifying relative to facts alleged in the original answer, the president of the defendant company made the following statement: "The only information I could have would be what Sanborn Jenks brought to me." If Sanborn Jenks brought him this information, by so doing he certainly advised the president of the company that he had been transacting this business with plaintiff. If this is what

happened, it is passingly strange that it did not occur to the president of defendant company that his nephew had been carrying on business in the name of the Port Huron Terminal Company not only without authority so to do, but in direct violation of the action claimed to have been previously taken by officers of the company. It is also somewhat strange that practically three months elapsed between the filing of the original answer and the amended answer wherein the defense of lack of authority is set forth. Also the record disclosed that when plaintiff's counsel first called the subject-matter of this suit to the attention of the president of the company, he said to plaintiff's attorney, ''I wish you would call Sanborn at the office and he will know all about it.'' Also it appears from the record that when plaintiff's attorney requested W. S. Jenks to reship to plaintiff the goods still on hand, W. S. Jenks said: ''Under instructions from *W. L. Jenks* he was not releasing any goods without a letter directing it.'' We think the defense of lack of authority of the vice-president to bind the company is not sustained by the record. While the record does not show, and it could hardly be expected it would, that the other officers of defendant company actually held W. S. Jenks out as one authorized to bind defendant, nonetheless the other officers of this company did knowingly countenance a course of conduct along the line of the facts above recited which we think renders the defendant company liable to plaintiff for the damage it seeks to recover in the instant suit.

The judgment entered in the circuit court is affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.